## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## OWENSBORO DIVISION

**CIVIL ACTION NO. 4:10CV-00120-JHM**

**BRYAN E. SCOTT**                                                        **PLAINTIFF**

**VS.**

**PATRICK R. DONAHOE, POSTMASTER GENERAL**
**UNITED STATES POSTAL SERVICE**                          **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion by Defendant, Patrick R. Donahoe, Postmaster General, United States Postal Service ("USPS"), for summary judgment [DN 17]. Fully briefed, this matter is ripe for decision.

## I.  STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The rule requires the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the

materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1).
"The mere existence of a scintilla of evidence in support of the [non-moving party's] position will
be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving
party]." Anderson, 477 U.S. at 252. It is against this standard that the Court reviews the following
facts.

## II. BACKGROUND

Plaintiff, Bryan E. Scott, has been employed with the United States Postal Service
("USPS") since 1993. Plaintiff began working as a temporary postal employee in Louisville,
Kentucky, and moved to Owensboro, Kentucky, about a year later to work in a non-bid permanent
part-time position. He worked in that position for several years until he was promoted to a full-time
City Carrier bid position with his own mail route. Plaintiff currently works as a City Carrier in a
non-bid position at the Owensboro Branch. For approximately the last ten years, Plaintiff has served
as a Union Steward for the National Association of Letter Carriers, AFL-CIO in the Owensboro Post
Office.

On March 23, 2003, Plaintiff was injured on the job while lifting a package on his bid route.
He was initially treated for a lumbar strain. Plaintiff's physician eventually placed him on limited
work duty with restrictions on lifting, walking, bending, twisting, and other postal carrier functions.
Plaintiff applied for benefits through the Office of Workers' Compensation Program, was removed
from his bid route position, and placed in a limited duty non-bid position.

Plaintiff's medical restrictions were periodically evaluated. He was required to submit
updated medical restriction forms from his physician and was given Offers of Modified Assignment
(limited duty job offers), also known as Form 2499, after his work injury in 2003. On September

20, 2006,  Plaintiff accepted a limited duty job offer which required him to perform the following

duties:

| | | |
|---|---|---|
| • | Express Mail, Deliver Relays, Cluster Box Delivery<br>Within Restrictions | 1 – 6 hours |
| • | Carrier, Administrative and Customer Service Functions | 1 – 2 hours |
| • | Change, Cluster Box Locks if no Carrier Duties Available | 0 – 4 hours |
| • | Clerk Duties Within Restrictions if no Carrier Duties Available | 0 – 4 hours |

(Limited Duty Job Offer, EEO-ROI 236.)  According to Defendant, the record reflects that many

of the job duties assigned to Plaintiff from 2003 to 2010 pursuant to the limited duty offers were

"make work" tasks for limited duty employees.  The USPS would design tasks for limited duty

employees to ensure that those employees received eight hours of work per day.  According to

Plaintiff, he was assigned to deliver Express mail pieces and "hot casing" External First Class Mail.

The Owensboro Post Office received Express Mail pieces after the route carriers had left to deliver

their routes, so Plaintiff would deliver those pieces to ensure their timely delivery.  "Hot case" mail

was External First Class Mail that had been delivered to the Owensboro Post Office before the route

carriers left to deliver their routes but had been mistakenly placed in the wrong cases.  Plaintiff was

assigned to deliver mail from the Post Office to one large volume mail customer, U.S. Bank, on a

daily basis.

The USPS faced historic revenue losses over the past few years.  For example, the USPS lost

$3.8 billion in Fiscal Year 2009.  Defendant represents that as part of cost-cutting measures, the

USPS developed the National Reassessment Program ("NRP") which replaced the "make work"

standard with the "necessary tasks" standard for limited duty employees.[1]  The NRP established

---

[1]The National Reassessment Program is the center of an ongoing class action lawsuit that
alleges that the program violates the Rehabilitation Act of 1973 by discriminating against all
current and former Postal Service permanent rehabilitation and limited duty employees on the

committees in each district to review limited duty workers' job assignments and to determine if they were performing "necessary tasks" or simply performing "make work" based on their work restrictions. Assignments were to be based upon review of limited duty employees' current medical restrictions and the necessary work needed at the USPS. Approximately 40 USPS employees in the Kentuckiana District were offered limited duty work assignments under the NRP. William Bartley, Team Leader of the NRP Committee, testified that each limited duty employee's situation was considered individually based on the employee's work location, job, medically defined work limitations, and the operationally necessary work tasks available. (Bartley Aff. at EEO-ROI-359.)

On December 31, 2009, the Union Stewards received notification that the Kentuckiana District NRP team would be holding meetings with limited duty employees to discuss their job assignments. Three limited duty employees in the Owensboro Post Office – Plaintiff, Patricia Clark, and Myrna Dillow – were notified that the NRP Committee would meet with them on January 21, 2010. Less than a week before the NRP meetings were to take place, Barbara Cardoza assumed the position of Postmaster at the Owensboro Post Office. The NRP team, consisting of  William Bartley, Donna Blackthorn, and Ted Gibbs, along with Postmaster Cardoza and Plaintiff's Supervisor Mike Pate, developed a limited duty job offer under the National Reassessment Plan and presented it to Plaintiff. The limited duty job offer included:

- Transport mail to Postal Store      .7 hr.
- Case route 03009        1.3 hrs
- Distribute, scan, and prepare firm sheet for U.S. Bank 1 hr
- 

(Limited Duty Job Offer, EEO-ROI-0246.) The limited duty job offer reduced Plaintiff to three hours of work a day, a five hour reduction from the previous limited duty job offer under which he

basis of their disabilities. <u>McConnell v. U.S. Postal Service</u>, EEOC Case No. 520-2008-00053X.

4

had been working.  On February 20, 2010, Postmaster Cardoza revised Plaintiff's limited duty job offer to provide that he would transport and deliver Express Mail for three hours per day.  (EEO-ROI-234.)   Plaintiff then received another limited duty job offer on March 30, 2010, which continued his duties of transporting and delivering Express Mail for three hours per day. (EEO-ROI-232.)  In June of 2010, in light of a clarification of Plaintiff's physical restrictions, Plaintiff received another limited duty job offer that provided he could work seven hours per day casing two routes and delivering Express and EXFC mail.  On June 21, 2010, Plaintiff received another limited duty job offer that provided eight hours of work per day casing two routes and delivering express mail. Plaintiff currently works in a non-bid position delivering Express Mail and EXFC mail eight hours a day.

After receiving the January 21, 2010, job offer reducing his hours to three hours a day, Plaintiff alleges that he found out that several similarly situated female co-workers had received more favorable limited duty job offers from Postmaster Cardoza which allowed them to work more hours each day.  On April 13, 2010, Plaintiff filed a formal EEOC Complaint alleging gender discrimination and retaliation.  On September 9, 2010, the EEOC dismissed Plaintiff's EEOC complaint finding that Plaintiff was not subjected to gender discrimination or retaliation. (EEO-ROI 0010 - 0027.)

Plaintiff also filed a grievance with the National Association of Letter Carriers claiming that the USPS violated provisions of the union's collective bargaining agreement by reducing Plaintiff's hours under the January 21, 2010, limited duty job offer.  Plaintiff prevailed on the grievance and was awarded wages and benefits he lost between January 2010 and June 2010.  The arbitrator concluded that "[t]he reduction of the Grievant's LDJO to three hours per day was unwarranted by

5

the facts of this case.  The evidence demonstrated that there was adequate work within the Grievant's office, and his hours should not have been reduced."  (Regular Arbitration at 1; DN 16-19.)

On October 27, 2010, Plaintiff filed this action against the United States Postal Service asserting claims of gender discrimination and retaliation under Title VII, 42 U.S.C. § 2000e. Defendant filed this motion for summary judgment arguing that (1) Plaintiff failed to state a prima facie case in his claim of gender discrimination and retaliation under Title VII and (2) Plaintiff cannot show that USPS's legitimate, non-discriminatory reason for reducing his work hours was a pretext for discrimination or retaliation.  The Court considers these arguments in turn.

### III.  DISCUSSION

### A.  Title VII Gender Discrimination Claim

Defendant argues that summary judgment on Plaintiff's claim of gender discrimination under Title VII, 42 U.S.C. § 2000e-2(a)(1), should be granted because Plaintiff failed to state a prima facie case and failed to show that the legitimate, nondiscriminatory reason for Plaintiff's reduction in hours was a pretext for unlawful discrimination.

### 1.  Prima Facie Case

Defendant first argues that Plaintiff has failed to make out a prima facie case of discrimination under Title VII.  Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to ... compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  Where, as here, a plaintiff offers only indirect evidence of discrimination, he may establish a prima facie case under Title VII by showing: "1) he

6

is a member of a protected class; 2) was qualified for the job; 3) he suffered an adverse employment decision; and 4) was replaced by a person outside the protected class or treated differently than similarly non-protected employees." Newman v. Federal Express Corp., 266 F.3d 401, 406 (6th Cir. 2001). In the reverse discrimination context, "'a plaintiff satisfies the first prong of the prima facie case by 'demonstrat[ing] background circumstances [to] support the suspicion that the defendant is that unusual employer who discriminates against the majority.'" Leadbetter v. Gilley, 385 F.3d 683, 690 (6th Cir. 2004) (quoting Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796, 801 (6th Cir. 1994)); Gielda v. Bangor Tp. Schools, 2012 WL 5869933, *4 (6th Cir. Nov. 20, 2012).

If a plaintiff satisfies this requirement, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse action. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Martin v. Toledo Cardiology Consultants, Inc., 548 F.3d 405, 410-11 (6th Cir. 2008); Daugherty v. Sajar Plastics, Inc., 544 F.3d 696, 703 (6th Cir. 2008). If the defendant articulates such a reason, the burden then shifts back to the plaintiff to show by a preponderance of the evidence that the proffered reason is pretextual. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000). This means that in order to withstand a motion for summary judgment a plaintiff must show that there is a triable issue of fact upon which a jury could reasonably find that more likely than not the employer's reason is a pretext for unlawful discrimination. Manzer v. Diamond Shamrock Chems. Co., 29 F.3d 1078, 1083 (6th Cir.1994).

### 2.  Similarly Situated

Defendant concedes that Plaintiff is a member of a protected class and that reduction in work hours qualifies as an adverse employment action. However, Defendant argues that Plaintiff failed to demonstrate that similarly situated non-protected employees were treated more favorably. In a

discrimination case, the Sixth Circuit has explained that "[i]n order for . . . employees to be considered similarly-situated . . . the plaintiff must prove that all of the relevant aspects of his employment situation are 'nearly identical' to those of the [non-protected] employees who he alleges were treated more favorably." Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796, 802 (6th Cir. 1994).  See also Knox v. Neaton Auto Prods. Mfg., Inc., 375 F.3d 451, 458 (6th Cir. 2004). In making this determination, courts assess certain factors, such as whether the comparable employees:

> have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

MacDonald-Bass v. J.E. Johnson Contracting, Inc., 2012 WL 3289825, *6 (6th Cir. Aug. 13, 2012)(quoting Noble v. Brinker Int'l, Inc., 391 F.3d 715, 729 (6th Cir. 2004) (citation omitted)). The Sixth Circuit recognizes that these factors listed above are not rigid requirements, but "are only apposite where they are meaningful to the particular claim of discrimination presented." Bobo v. United Parcel Service, Inc., 665 F.3d 741, 751 (6th Cir. 2012).

Plaintiff identified four female employees – Patricia Clark, Myrna Dillow, Darlene McCarter, and Jill Campbell – whom he alleges received more favorable treatment by Barbara Cardoza during the NRP than he did. (Scott Dep. at 44-47; Plaintiff's Response at 4-5.)  Plaintiff argues that each of the women identified were similarly situated to him in all relevant aspects. According to Plaintiff, each woman was working under a modified work assignment due to her medical restrictions; was forced to participate in the NRP; and was offered some type of modified work assignment by Defendant. (Plaintiff's Response at 4-5.)  Additionally, in his response to the motion for summary judgment, Plaintiff argues that Patricia Clark was offered modified work assignments under the NRP with an eight hour then six hour work day, while Plaintiff was only

offered a three hour work day.  (Plaintiff's Response at 4; EEO-ROI-0163.)

      Contrary to Plaintiff's argument, the four female employees identified by Plaintiff, Patricia Clark, Myrna Dillow, Darlene McCarter, and Jill Campbell, are not similarly situated to Plaintiff. First, the record reflects that Clark, Dillow, McCarter, and Campbell worked in different positions at the post office.  Specifically, Clark, Dillow, McCarter, and Campbell worked as mail carriers who delivered mail on their own dedicated mail routes, while Plaintiff worked in a non-bid position and did not have his own route.  (Scott Dep. at 44-47.)  Bid route mail carriers have dedicated routes for which they are responsible for delivering mail six days a week.  Plaintiff's position involved performing auxiliary tasks within the Owensboro Post Office.

      Second, McCarter, Clark, and Dillow also had different disability restrictions than Plaintiff. McCarter had been released by her physicians to return to full duty as a rural route carrier on June 19, 2007.  (EEO-ROI-382.)   While both Clark and Dillow were limited duty employees in the Owensboro Post Office, the record reflects that they had less stringent work restrictions than Plaintiff.  For example, Plaintiff's work restrictions as of October 9, 2009, indicated that he could lift no more than ten pounds and could only stand, walk, and perform other physical functions intermittently.  (EEO-ROI-201.)  In contrast, Clark could walk and stand for up to six hours, sit for up to two hours, and lift up to 15 pounds.  (EEO-ROI-369.)  Additionally, Clark was trained as a supervisor and, as a result, her limited job duty offer consisted of supervising the "p.m. operation" for six hours and preparing/analyzing reports for two hours.  (Id.)  Dillow could lift up to 35 pounds intermittently, walk for an hour intermittently, and sit for up to four hours intermittently which enabled her to carry her bid route.  (EEO-ROI-372.)  Therefore, Dillow's limited job duty offer

consisted of casing route[2] (1.5 hours) and carrying route (6.5 hours).  (EEO-ROI-371-76.)  After a review of the record and arguments of the parties, the Court finds that the four female employees identified by Plaintiff are not similarly situated because they worked in different positions prior to the National Reassessment Program and/or had different physical restrictions.

Furthermore, the Court rejects Plaintiff's argument that whether comparators are similarly situated for a gender discrimination claim is a question that should be left to the purview of the jury.  (Plaintiff's Response at 5 (citing <u>Bobo v. UPS</u>, 665 F.3d 741, 757 (6th Cir. 2012)).  The Sixth Circuit in <u>Bobo</u> decided that whether the plaintiff in that case was similarly situated to his comparators presented a question of fact that could not be resolved on summary judgment due to improperly narrowed discovery by the district court.  The Court did not hold that the determination of whether comparators are similarly situated must be submitted to the jury in all cases.  In fact, the Sixth Circuit consistently recognizes that whether a plaintiff is similarly situated to other comparators is a question that may be decided on summary judgment.  <u>See</u>, <u>e.g.</u>, <u>Tibbs v. Calvary United Methodist Church</u>, 2012 WL 5861725, *6 (6th Cir. Nov. 20, 2012); <u>MacDonald-Bass v. J.E. Johnson Contracting, Inc.</u>, 2012 WL 3289825, *6 (6th Cir. Aug. 13, 2012); <u>Peltier v. United States</u>, 388 F.3d 984, 988 (6th Cir. 2004).

Because Plaintiff has not identified a similarly situated non-protected employee who received more favorable treatment, Plaintiff has failed to satisfy the elements of his prima facie case of discrimination, and summary judgment is appropriate on his gender discrimination claim.

### B.  Title VII Retaliation

The Court next turns to Plaintiff's retaliation claim.  Plaintiff claims that he was retaliated

---

[2]"Casing" is sorting the mail in preparation for delivery.

against for filing grievances and EEO complaints for himself and on behalf of others as a union steward.   Like Title VII intentional discrimination claims which lack direct evidence of discrimination, retaliation claims based on circumstantial evidence are analyzed under the McDonnell Douglas burden shifting framework. Chen v. Dow Chemical Co., 580 F.3d 394, 402 (6th Cir. 2009)(citing Ladd v. Grand Trunk Western R.R., Inc., 552 F.3d 495, 502 (6th Cir. 2009)).  A plaintiff alleging discrimination and/or retaliation bears the initial burden to demonstrate the following prima facie elements: (1) he engaged in a protected activity; (2) this exercise of protected rights was known to the defendant; (3) the defendant thereafter took adverse employment action against the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action.  Scott v. Metropolitan Health Corp., 234 Fed. Appx. 341, 346 (6th Cir. 2007); Morris v. Oldham County Fiscal Court, 201 F.3d 784, 792 (6th Cir. 2000).  If a plaintiff satisfies this requirement, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse action.  McDonnell Douglas, 411 U.S. at 802.  If the defendant articulates such a reason, the burden then shifts back to the plaintiff to show by a preponderance of the evidence that the proffered reason is pretextual. Id.  Defendant maintains that Plaintiff has not raised a genuine issue of material fact as to his prima facie case or as to pretext.

### 1. Protected Activity

In response to the motion for summary judgment, Plaintiff argues that his participation in the EEO process, both for himself and on behalf of others, was clearly protected activity under Title VII.  Specifically, Plaintiff argues that as a union steward for the post office, he frequently assisted his fellow employees and union member in filing grievances and EEO complaints.  Plaintiff states that he also filed a complaint with the EEO, on his own behalf, alleging discrimination and retaliation

on April 13, 2010.

In addition to his own EEO Complaint filed on April 13, 2010, the record reflects that Plaintiff served as the union representative for a fellow employee, Devin McKnight, who filed an EEO complaint against the Owensboro Postmaster, Dave Nally, for racial discrimination and harassment and a Joint Statement of Violence against Alisa Zanetti, the Manager of Post Office Operations of Western Kentucky in 2010.  The record reflects that the EEO case was filed on April 8, 2009.  (EEO-ROI-157; DN 16-18.)  According to Plaintiff, McKnight's  EEO complaint was resolved. (Complaint ¶ 5.)  In his deposition, Plaintiff testified that he was also the union steward for Melissa Rock in a union grievance she filed against Zanetti in September 2009 that resulted in 204B supervisors not being allowed to issue discipline. (Scott Dep. at 33-34.)

Plaintiff's representation as union steward for McKnight in April of 2009 and the EEO Complaint he filed on his own behalf alleging discrimination and retaliation on April 13, 2010, qualify as protected activity.  However, with respect to Plaintiff's participation as union steward for Melissa Rock, the record does not reflect that the grievance opposed or protested discrimination or any other unlawful employment practice under Title VII.  Under Title VII, an employee has engaged in protected activity if he has "opposed any practice made an unlawful employment practice by this subchapter," or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).  As such, Plaintiff was not engaged in a protected activity when he was acting as union representative for Melissa Rock.  See Moore v. United Parcel Service, Inc., 150 Fed. Appx. 315, 319 (5th Cir. 2005).

### 2.  Adverse Employment Action

Defendant argues that Plaintiff failed to present sufficient evidence to raise a genuine issue

of material fact regarding whether he suffered an adverse employment action.  In <u>Burlington</u>
<u>Northern & Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 67 (2006), the United States Supreme Court
clarified the scope of Title VII's anti-retaliation provision holding that "the scope of the
antiretaliation provision extends beyond workplace-related or employment-related retaliatory acts
and harm." <u>Id.</u> at 67.

> The [Supreme] Court then explained the level of seriousness to which the
> harm must rise before it becomes actionable retaliation: "[A] plaintiff must show that
> a reasonable employee would have found the challenged action materially adverse,
> which in this context means it well might have dissuaded a reasonable worker from
> making or supporting a charge of discrimination."  <u>Id.</u> at 2415 (citations and
> quotation marks omitted). "We speak of material adversity," the Court continued,
> "because we believe it is important to separate significant from trivial harms." <u>Id.</u>
> The purpose of Title VII's anti-retaliation provisions is to prohibit "employer actions
> that are likely to deter victims of discrimination from complaining to the EEOC, the
> courts, and their employers," and "normally petty slights, minor annoyances, and
> simple lack of good manners will not create such deterrence." <u>Id.</u> (citation and
> internal quotation marks omitted). The Court further explained that it purposely
> phrased the standard in general terms "because the significance of any given act of
> retaliation will often depend on the particular circumstances." <u>Id.</u> Thus, for example,
> a "supervisor's refusal to invite an employee to lunch is normally trivial, a
> nonactionable petty slight. But to retaliate by excluding an employee from a weekly
> training lunch that contributes significantly to the employee's professional
> advancement might well deter a reasonable employee from complaining about
> discrimination." <u>Id.</u> (citing 2 EEOC 1998 Manual § 8, p 8-14.)

<u>Halfacre v. Home Depot, U.S.A., Inc.</u>, 221 Fed. Appx. 424, 432 (6th Cir. 2007)(quoting <u>Burlington</u>
<u>Northern & Santa Fe Railway Company v. White</u>, 548 U.S. at 67).

Plaintiff claims that Postmaster Cardoza subjected him to "numerous retaliatory actions."
Specifically, in response to the motion for summary judgment, Plaintiff alleges that he was subjected
to the following hostile and retaliatory actions:

- January 21, 2010:  Plaintiff met with Cardoza, who informed him that his normal
  eight hour work day was being reduced to three hours under the National
  Reassessment Plan. (Scott Aff. R. 16, EEO-ROI-0154.)

- February 8, 2010:  Sandy Mosley began to harass Plaintiff because he was not allegedly making correct clock rings.  (Id. at 164.)[3]

- February 13, 2010:  Plaintiff requested five hours of Steward Time.  Supervisor Noffsinger refused to approve that time stating that Plaintiff's workday was set at three hours. (Id.)

- Around February 13, 2010: Supervisors Dudley and Noffsinger informed all the City Carriers in Plaintiff's facility, during a Plan 5 meeting that they did not want anyone in the building talking to Scott, and if they needed to, they should first request permission from a supervisor. (Id.)

- March 17, 2010:  Plaintiff met with Postmaster Cardoza, at her request, regarding grievances that he had assisted other co-workers in filing in his role as Union Steward.  Cardoza reprimanded him for not filling out the grievances correctly. (Id.)

- April 9, 2010:  Supervisor Noffsinger signed Plaintiff's name to a pre-disciplinary interview he had completed with another employee.  Plaintiff became aware of this on May 13, 2010. (Id.)

- April 10, 2010:  Plaintiff received a Pre-Disciplinary Interview for allegedly failing to scan nineteen Express Mail pieces.  Plaintiff received an Official Job Discussion regarding this matter on April 22, 2010. (Id.)

- On May 7, 2010:  During a formal meeting with Cardoza regarding Plaintiff's limited duty job offer grievance, Cardoza informed Scott that his CA-17 did not provided her with clear enough guidelines as to what work Plaintiff's medical restrictions allowed him to perform.  Cardoza requested Plaintiff up-date his restrictions on form CA-17, even though he had previously completed one on February 17, 2010. (Id.)

- May 8, 2010:  Plaintiff was informed by Cardoza that she did not want him to drive the Long Life Vehicles anymore. (Id.)

- May 26, 2010: Cardoza advised Plaintiff that she did not want him to use a u-cart any longer.  (Id.)

(See Plaintiff's Response at 9-13.)

The limited duty job offer received by Plaintiff on January 21, 2010, constitutes a materially

---

[3]The record reflects that Noffsinger met with Plaintiff on February 13, 2010, to review the proper procedure for making clock rings.

adverse employment action.  Defendant does not argue to the contrary.  However, the remainder of the alleged retaliatory actions do not rise to a level of materially adverse employment action under the standard outlined in Burlington.  As discussed above,"[t]he antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm. . . . [A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."   Burlington Northern, 548 U.S. at 67.  Here, Mosley's correction of Plaintiff's recording clock rings, Cardoza's "reprimand" for not filling out grievances correctly, Noffsinger's denial of Plaintiff's request for five hours of steward time, Noffsinger's placement of Plaintiff's name on the pre-disciplinary interview form of another employee, and Dudley and Noffsinger's alleged instruction that all city carriers should refrain from talking with Plaintiff[4] resulted in no discipline to Plaintiff.  Such criticisms of Plaintiff, allegations of "snubbing," and adherence to the limited duty job offer time requirements are not sufficient to show a retaliatory adverse employment action.   As explained by the United States Supreme Court in Burlington Northern,"petty slights," "minor annoyances," and "snubbing" by supervisors and co-workers is not actionable under Title VII.  Blackburn v. Shelby Co., 770 F. Supp. 2d 896, 925 (W.D. Tenn. 2011); see also Burlington, 548 U.S. at 68 ("An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience."; see 1 B. Lindemann & P. Grossman, Employment Discrimination Law 669 (3d ed.1996) (noting that "courts have held that personality conflicts at

_____

[4]Plaintiff has submitted no support for his allegation that Supervisors Dudley and Noffsinger informed city carriers to refrain from speaking to Plaintiff.

15

work that generate antipathy" and "'snubbing' by supervisors and co-workers" are not actionable under § 704(a))).

Similarly, Plaintiff's pre-disciplinary interview for allegedly failing to scan nineteen Express Mail pieces on April 10, 2010, along with his Official Job Discussion on April 22, 2010, did not result in any discipline.  In fact, Plaintiff submitted the affidavit of Patricia Scott, a rural carrier, who testified that on April 29, 2010, she was informed by Postmaster Cardoza and Supervisor Dudley that the Express Mail pieces in question failed to download to the system on April 10, 2010, and that Plaintiff did not make the error as originally believed.  (Patricia Scott Aff. at ¶ 4.)  This statement by Patricia Scott confirms that the scan of the nineteen Express Mail pieces did not originally appear on the date of the pre-disciplinary interview and, therefore, that such interview was at that time actually warranted.

Finally, Postmaster Cardoza's request for clarification of Plaintiff's CA-17 form on May 7, 2010, along with the subsequent instruction by Cardoza for Plaintiff to not use the Long Live Vehicle or the u-cart, do not qualify as adverse employment actions.  The record reflects that the doctor who prepared Plaintiff's CA-17 utilized to issue the January 21, 2010, limited job offer had not checked either the "continuous" or "intermittent" box on some of the activities and had not placed a temporal duration on some of the intermittent limitations.  Cardoza testified that because Plaintiff's CA-17 did not indicate if he could climb she asked him not to drive the Long Live Vehicle.  Cardoza further testified that because the CA-17 indicated that Plaintiff had a ten pound lifting restriction, Cardoza instructed him not to use the u-cart because it had a thirty pound drag. (EEO-ROI-0303.)  Once the CA-17 was clarified, Cardoza permitted Plaintiff to drive the Long Live Vehicle and use the u-cart.  The actions by Cardoza do not qualify as materially adverse employment

actions.  Plaintiff received no discipline and once the CA-17 issue was resolved, he was permitted to resume using the equipment in question.  Further, the clarification of the CA-17 actually resulted in another limited duty job offer being extended to Plaintiff which resulted in an increase in his work hours to 8 hours per day.

Under the standards set forth by <u>Burlington Northern</u>, the Court finds that the actions by Postmaster Cardoza and Plaintiff's supervisors would not likely deter reasonable employees from complaining to the EEOC, the courts, and their employers of discrimination.  <u>Burlington Northern</u>, 548 U.S. 68.  For these reasons, the Court finds that these actions do not constitute a materially adverse employment action.

### 3.  Knowledge of the Protected Activity and Causal Connection

As discussed above, Plaintiff alleges that Postmaster Cardoza subjected him to "numerous retaliatory actions." (Plaintiff's Response at 8-9.) The first retaliatory action alleged is the reduction of Plaintiff's hours from eight hours to three hours under the National Reassessment Plan on January 21, 2010.  Plaintiff has failed to present any evidence that Postmaster Cardoza or the NRP Committee knew of Plaintiff's representation as union steward for McKnight in April of 2009.  Even assuming that Cardoza knew of Plaintiff's activity, Plaintiff has offered no evidence of a causal connection between the alleged protected activity and Defendant's decision to reduce his work hours under the NRP.

To establish a causal connection, the plaintiff must "proffer evidence sufficient to raise the inference that [his] protected activity was the likely reason for the adverse action." <u>E.E.O.C. v. Avery Dennison Corp.</u>, 104 F.3d 858, 861 (6th Cir.1997)(citation omitted). "In determining whether there is a causal relationship between a plaintiff's protected activity and an allegedly retaliatory act,

17

courts may consider whether the employer treated the plaintiff differently from similarly situated individuals and whether there is a temporal connection between the protected activity and the retaliatory action." Barrett v. Whirlpool Corp., 556 F.3d 502, 516–517 (6th Cir. 2009). While it is true that temporal proximity alone is usually insufficient to establish a causal connection for a retaliation claim, the causal connection element is satisfied "where the adverse employment action occurred within a matter of months, or less, of the protected activity." Dixon v. Gonzales, 481 F.3d 324, 334 (6th Cir. 2007).  See also Goller v. Ohio Dept. of Rehabilitation and Correction, 285 Fed. Appx. 250, 257 (6th Cir. 2008); Singfield v. Akron Metro. Hous. Auth., 389 F.3d 555, 563 (6th Cir. 2004)(three-month period between the protected activity and employee's termination is sufficient to create a causal connection for the purposes of establishing a prima facie case).  However, "where some time has elapsed between when the employer learns of the protected activity and the adverse employment action, the employee must produce other evidence, in addition to the temporal proximity, in order to establish causation." Leidner v. Napolitano, 2010 WL 5300533, *22 (E.D. Ky. Nov. 23, 2010)(citing Mickey v. Zeidler Tool and Die Co., 516 F.3d 516, 525 (6th Cir. 2008)).

The reduction of Plaintiff's work hours over six months after Plaintiff serving as union steward on McKnight's EEOC Complaint and grievance does not support an inference of causation via temporal proximity.  The reduction in hours did not occur close in time to the protected activity relied upon by Plaintiff.  See Frankenberg v. Potter, 2009 WL 773502 (W.D. Ky. March 23, 2009); Brown v. Lexington-Fayette Urban County Government, 2012 WL 2105366, *5 (6th Cir. June 12, 2012); Imwalle v. Reliance Medical Products, Inc., 515 F.3d 531, 550 (6th Cir. 2008); Cooper v. City of North Olmsted, 795 F.2d 1265, 1272 (6th Cir.1986) ("The mere fact that Cooper was discharged four months after filing a discrimination claim is insufficient to support an [inference]

18

of retaliation."). The Court has previously held that the four female employees identified by Plaintiff are not similarly situated because they worked in different positions prior to the National Reassessment Program and/or had different physical restrictions. Plaintiff fails to produce any other evidence to establish causation.

Accordingly, the Court finds that Plaintiff has not stated a prima facie case of retaliation because no jury could reasonably conclude that his union steward activity with respect to McKnight's EEOC claim and grievance in April of 2009 caused the reduction of his work hours in January of 2010, and therefore summary judgment is appropriate

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion for summary judgment by Defendant, Patrick R. Donahoe, Postmaster General, United States Postal Service [DN 17] is **GRANTED**. A Judgment will be entered consistent with this Opinion.

cc:     counsel of record

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

December 18, 2012

19